IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| | |
|---|---|
| HOME SHOW TOURS, INC., an Illinois Corporation d/b/a QCHOMESHOW.COM a/k/a QUADCITYHOMESHOW.com,<br><br>  Plaintiff,<br><br>vs.<br><br>QUAD CITY VIRTUAL, INC., an Iowa Corporation, d/b/a QCFSBO.com a/k/a QCFSBO, and SYMMETRY MORTGAGE CORP., an Iowa Corporation,<br><br>  Defendants. | No. 3:08-cv-00127 – JEG<br><br>**O R D E R** |

This matter comes before the Court on a Motion for Attorney Fees brought by Defendant Quad City Virtual, Inc. (QCFSBO). Plaintiff Home Show Tours (Home Show) resists. The Court held a telephonic hearing on the motion. Attorney James Zmuda represented Home Show and attorney Ian Russell represented QCFSBO. The matter is fully submitted and ready for disposition.

I. **BACKGROUND**

Home Show and QCFSBO both operate for sale by owner (FSBO) websites in the Quad Cities Area. On September 30, 2008, Home Show filed this lawsuit against QCFSBO alleging violations of the Lanham Act, 15 U.S.C. §§ 1051-1127, and state law claims for libel and false light for publishing allegedly false and defamatory statements about Home Show on QCFSBO's website.

On February 12, 2009, Home Show filed a motion for a temporary restraining order (TRO), which this Court denied on February 13, 2009 (Feb. 13 Order Denying TRO), on grounds that the record before the Court did not contain specific factual allegations to support Home Show's

conclusion that the matters on QCFSBO's website were untrue and unproven.  Specifically, the Feb. 13 Order Denying TRO stated that the record and argument Home Show provided to the Court were "fundamentally insufficient to support any conclusion regarding the Plaintiff's likelihood of success on the merits" and that the mere fact that the statements existed provided "the Court with no reasonable basis upon which to address their truthfulness, reasonable interpretation, context, or relationship to legally permissible commercial puffing."  Feb. 13 Order Denying TRO 3, ECF No. 12.

On May 5, 2009, Home Show amended its complaint adding a count for intentional interference with business relationship and prospective business relationship.  On October 7, 2009, Home Show further amended its complaint to add Defendant Symmetry Mortgage Corp. (Symmetry) and an antitrust claim under the Sherman Act, 15 U.S.C. §§ 1, 2, against QCFSBO and Symmetry.

QCFSBO and Symmetry filed motions for summary judgment on August 2, 2010, and August 12, 2010, respectively.  On August 17, 2010, Home Show filed a notice of intent to serve a subpoena on nonparty Clear Channel Quad City Radio Group, a media company from whom Home Show and Defendants purchased advertising.  QCFSBO moved to quash, arguing that discovery ended in July 2010 and further discovery was a delay tactic.  The Court denied the motion to quash, noting that Home Show could continue to develop the facts absent proof of prejudice to a party while cautioning that such efforts may not result in admissible evidence and that a remedy to the Defendants for the delay may be to apply for costs.

On December 13, 2010, the Court conducted a hearing on the motions for summary judgment.  On March 23, 2011, in its order on Defendants' motions for summary judgment, this

Court noted that "[a]t the commencement of the hearing on the pending motions, the Court specifically advised of its concern that the record was not entirely clear regarding which statements Plaintiff considered actionable and encouraged some effort to clarify those matters. No further clarification was provided." Home Show Tours, Inc. v. Quad City Virtual, Inc., __ F. Supp. 2d __, 2011 WL 6073317, at *2 n.8 (S.D. Iowa Mar. 23, 2011). The Court granted Defendants' motions for summary judgment, concluding that the complaint provided no evidence of actual falsity and that Home Show had not otherwise provided evidence to raise a genuine issue of material fact to preclude summary judgment on its claims.

On April 6, 2011, QCFSBO filed this motion asserting that an award of attorney fees under the Lanham Act is appropriate in this case because the lawsuit lacked foundation from the time it was filed and Home Show failed to present any evidence beyond the pleadings. Home Show resists, arguing QCFSBO is not entitled to attorney fees under the Lanham Act because Home Show filed this lawsuit based upon a sincere belief that the statements on QCFSBO's website were false and misleading.

## II. DISCUSSION

### A. Standard for the Motion

The Lanham Act states that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). The legal structure that has evolved around the statute must be carefully considered in the context of the specific facts of the case at bar, recognizing that lawyers routinely rely upon information and impressions from their clients, and clients often possess honestly held but essentially and ultimately inaccurate conclusions. Beyond intentional abuse of the litigation process, the core question is if and when it becomes

inescapable that the claims have no merit and the case continues without just cause and with unnecessary harm.

"[A]n exceptional case is one in which the plaintiff's action was groundless, unreasonable, vexatious, or pursued in bad faith." Fair Isaac Corp. v. Experian Info. Solutions, Inc., 650 F.3d 1139, 1152 (8th Cir. 2011) (citing Aromatique, Inc. v. Gold Seal, Inc., 28 F.3d 863, 877 (8th Cir. 1994) (per curiam) (Morris Sheppard Arnold, J., plurality opinion)). Important herein, however, "[b]ad faith is not a prerequisite to a Lanham Act fee award." Hartman v. Hallmark Cards Inc., 833 F.2d 117, 123 (8th Cir. 1987); see Cmty. of Christ Copyright Corp. v. Devon Park Restoration Branch of Jesus Christ's Church, 634 F.3d 1005, 1013 (8th Cir. 2011) (reiterating that in determining whether a case is exceptional, a finding of bad faith is not a prerequisite). The Lanham Act grants district courts "broad discretion to award the monetary relief necessary to serve the interests of justice, provided it does not award such relief as a penalty." Metric & Multistandard Components Corp. v. Metric's, Inc., 635 F.2d 710, 715 (8th Cir. 1980); see also Fair Isaac Corp., 650 F.3d at 1152 (stating that the decision whether to award attorney fees under the Lanham Act is reviewed for abuse of discretion).

In determining whether a case is exceptional for purposes of awarding attorney fees under the Lanham Act, prevailing plaintiffs and prevailing defendants are treated alike. See Aromatique, Inc., 28 F.3d at 876 (discussing Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 (1994), wherein the Supreme Court interpreted the Lanham Act's fee shifting provision and held that even if the district court determines that it is an "exceptional case," the award of attorney fees is discretionary and that in determining whether to award attorney fees, prevailing plaintiffs and prevailing defendants are treated alike). In the Eighth Circuit, "an exceptional case within the

meaning of Section 35 is one in which one party's behavior went beyond the pale of acceptable conduct." Aromatique, Inc., 28 F.3d at 877; see also Cmty. of Christ Copyright Corp., 634 F.3d at 1013 (affirming the award of attorney fees to prevailing plaintiff after determining defendant's conduct was willful and deliberate).

QCFSBO argues this case is exceptional because Home Show initiated a groundless lawsuit and continued to pursue its claims on the same weak evidence set forth in its pleadings despite the Court's warning in the Feb. 13 Order Denying TRO that more evidence and clarification were needed. Home Show counters that it acted in good faith and had colorable claims given the nature of the comments posted on QCFSBO's website and the fact that Home Show was losing business.

"The Senate Report on the bill adding the attorney fee provision to the Lanham Act indicates defendants will be allowed to recover fees in exceptional cases in order to 'provide protection against unfounded suits'"; however, a weak claim alone is not enough to make a case exceptional. Hartman, 833 F.2d at 123-24 (quoting S. Rep. No. 93-1400 (1974), reprinted in 1974 U.S.C.C.A.N. 7132, 7136). Indeed, in Hartman v. Hallmark Cards, Inc., the court affirmed the denial of attorney fees to the prevailing defendant noting that "the existence of one weak element in a potential theory of recovery did not convince the district court [plaintiff]'s case as a whole was flawed to the degree she should bear the cost of her opponent's attorney fees for obtaining summary judgment." Id.

Here, however, the groundless nature of Home Show's Lanham Act claim exceeds more than one weak element. Early in this litigation, in its Feb. 13 Order Denying TRO, this Court put Home Show on notice that it needed to clarify the legal basis for its Lanham Act claims. Home

5

Show responded by adding another defendant and new causes of action but continued to rely on its initial pleadings. While a failure of evidentiary support at the very early stage of seeking preliminary relief would rarely alone suggest a suit would ultimately be groundless, it is axiomatic that evidentiary support is eventually required. The Court is compelled to conclude all doubt that those claims were groundless was removed when Home Show responded to Defendants' motions for summary judgment with an obvious inability to provide any evidence of a violation of the Lanham Act beyond the sixteen screenshots from QCFSBO's website that had been filed with Home Show's original complaint and the self-serving deposition testimony of Home Show's owner, Troy Vavrosky (Vavrosky). Further, Vavrosky testified that "*he believed*" the statements on QCFSBO's website, such as QCFSBO was "the number one FSBO destination in the QCA," were "*not accurate*," but he could not offer a factual basis for the alleged falsity of the statements, only subjective disapproval. Vavrosky Dep., QCFSBO's App. 44-45, ECF No. 37-3 (emphasis added). Beyond his subjective disapproval, Vavrosky referenced no evidence to support claims of falsity. As this Court reasoned in granting summary judgment,

> [n]othing in Vavrosky's testimony demonstrates that the statements contained on QCFSBO's website were actually false, rather Vavrosky's testimony merely demonstrates Home Show's subjective disagreement with those statements. Similarly, Home Show's annotations of "untrue" and "unproven," found on the screenshots contained in Exhibit A [to the complaint], amount to unsupported allegations of falsity or disagreement and simply do not generate a genuine issue of material fact to defeat summary judgment on a Lanham Act claim.

Home Show Tours, Inc, 2011 WL 6073317, at *10.

Home Show relies on Comidas Exquisitos, Inc. v. Carlos McGee's Mexican Café, Inc., 602 F. Supp. 191 (S.D. Iowa 1985), and argues the present case is similarly not an exceptional case. In Comidas, an Atlanta-based restaurant using the registered mark, "Carlos McGee's," sued

6

Carlos McGee's Mexican Café located in Iowa for, among other things, service mark infringement. Id. at 194-95. In denying summary judgment, the court noted that while the "plaintiff may have considerable difficulty" proving its case, the plaintiff produced evidence of plans for national expansion, advertising, and promotions that had reached Iowa. Id. Ultimately, the defendants prevailed, but the court denied the defendant's motion for attorney fees, reasoning that "[d]espite the weakness of plaintiff's case, the Court cannot say that it involved bad faith, frivolous claims, or claims brought for the purpose of economic coercion." Id. at 199. This case is distinguishable not only because Home Show failed to produce evidence to establish the elements of its claim in order to survive summary judgment, but also because Home Show unnecessarily prolonged the litigation by ignoring the Court's earlier guidance that Home Show needed to clarify its pleadings, and because the development of the case failed to generate the required factual support.

Because Home Show's only asserted grounds for pursuing its Lanham Act claims were loss of business and its subjective disagreement with statements on QCFSBO's website, neither of which satisfy elements of a colorable claim under the Lanham Act, the Court is compelled to find that Home Show's case was "groundless, unreasonable, [and] vexatious." Fair Isaac Corp., 650 F.3d at 1152. The Court further finds that, at a minimum, by the time QCFSBO filed its motion for summary judgment, Home Show's behavior "went beyond the pale of acceptable conduct." Aromatique, Inc., 28 F.3d at 877; see, e.g., Mennen Co. v. Gillete Co., 565 F. Supp. 648, 657 (S.D.N.Y. 1983), aff'd, 742 F.2d 1437 (2d Cir. 1984) (awarding defendant Lanham Act attorney fees reasoning that "[t]here is a substantial overtone in this case to warrant an inference that this suit was initiated as a competitive ploy," and thus "it carries necessary damage to the defendant

when the plaintiff's claims are found, as they are here, to have no real substance"); Marilyn Miglin Model Makeup, Inc. v. Jovan, Inc., 225 U.S.P.Q. 721, 723 (N.D. Ill. 1984) (awarding Lanham Act attorney fees to the prevailing defendant reasoning that "[p]laintiff's theory of the case was vague and throughout the litigation considerable misunderstanding and delay were occasioned by the fact that plaintiff's theory of her case was never precisely articulated and, indeed, was not susceptible to articulation").

In defending against summary judgment, it was absolutely necessary for Home Show to present the evidentiary basis for its claims.[1] Home Show simply defaulted to its complaint, which the Court had previously indicated was inadequate. Accordingly, the Court finds that it was at that point, the need to fashion a response to the motion for summary judgment, this became an "exceptional case" under § 1117(a) of the Lanham Act and an award of fees accruing from the time QCFSBO moved for summary judgment motion forward is appropriate. See, e.g.,

---

[1] The standard of review on a motion for summary judgment is neither obscure or new. As the Court announced previously, Home Show "may not merely point to unsupported self-serving allegations, but must substantiate [its] allegations with sufficient probative evidence that would permit a finding in [its] favor, *without resort to speculation, conjecture, or fantasy*." Reed v. City of St. Charles, Mo., 561 F.3d 788, 790-91 (8th Cir. 2009) (internal quotations and citations omitted) (emphasis added); Doe v. Dep't of Veterans Affairs of the U.S., 519 F.3d 456, 460 (8th Cir. 2008) (internal quotation omitted). "A party cannot defeat a summary judgment motion by asserting 'the mere existence of *some* alleged factual dispute between the parties'; the party must assert that there is a '*genuine* issue of *material* fact.'" Quinn v. St. Louis County, 653 F.3d 745, No. 10-3332, 2011WL 3890319, at *3 (8th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original)). The fact must be material so that it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. The grant of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." In re Baycol Products Litig., 596 F.3d 884, 888-89 (8th Cir. 2010) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). "In sum, the evidence must be 'such that a reasonable jury could return a verdict for the nonmoving party.'" Reed, 561 F.3d at 791 (quoting Anderson, 477 U.S. at 248).

J & J Snack Foods, Corp. v. Earthgrains Co., No. 00-6230 (JBS), 2003 WL 21051711, at *3-6 (D.N.J. May 9, 2003) (granting defendant's motion for attorney fees under the Lanham Act reasoning that plaintiff's case initially presented "some arguable issues" but after the court entered a lengthy order denying Plaintiff's motion for preliminary injunction pointing out the weaknesses of the plaintiff's Lanham Act claims, the "plaintiff failed to fill the gaps or respond in any meaningful way to the Court's direction, yet pursued the non-meritorious case, the case became exceptional" because "[i]nstead of acknowledging the flaws in [its] case, plaintiff pressed forward and required defendants to file, brief, and argue their summary judgment motion").

### B. Apportionment

QCFSBO maintains that it has spent a total of 276.9 hours litigating this case, which amounts to $49,306.18 in attorney fees. QCFSBO initially asserted that Home Show's Lanham Act claim was so intertwined with Home Show's other claims that it was impossible to differentiate the defense costs of the Lanham Act claim. See Gracie v. Gracie, 217 F.3d 1060, 1069-70 (9th Cir. 2000) (holding that despite the general rule of apportionment, it might not be required when "the Lanham Act claims and non-Lanham Act claims are so intertwined that it makes it *impossible to differentiate* between work done on claims"; however, "the impossibility of making an *exact* apportionment does not relieve the district court of its duty to make *some* attempt to adjust the fee award in an effort to reflect an apportionment" (internal quotation marks omitted)). The emerging rule appears to be that the Court must endeavor to award fees incurred solely on the Lanham Act claims if that can be accomplished under the circumstances of the case. Id. During the telephonic hearing, QCFSBO indicated some attorney fees not attributable to the

9

Lanham Act claim were separable and that it could submit a revised fees statement at the Court's request. The Court now makes that request, with the intention of reviewing that submission to determine the direct links to the Lanham Act defense.

## III. CONCLUSION

For the reasons stated, the Court must find this to be an "exceptional case" warranting the award of attorney fees under 15 U.S.C. § 1117(a); and, therefore, QCFSBO's Motion for Attorney Fees (ECF No. 67) must be **granted**. Accordingly, attorney fees in an amount to be determined will be awarded against Home Show and paid to QCFSBO. Within fourteen days from the date of this Order, QCFSBO shall submit a statement detailing the hours and cost of attorney fees attributable to defending against the Lanham Act claim that QCFSBO incurred from the filing of its summary judgment motion forward. After reviewing QCFSBO's revised fee statement, the Court will enter a final order on the motion for fees.

**IT IS SO ORDERED.**

Dated this 4th day of January, 2012.

_____
JAMES E. GRITZNER, Chief Judge
U.S. DISTRICT COURT